THE STATE OF OHIO, APPELLANT, *v.*
BERNATH, APPELLEE.

(No. F-81-9—Decided
September 25, 1981.)

*Mr. William Swigart,* prosecuting attorney, and *Mr. Michael J. Bumb,* for appellant.

*Mr. David P. Rupp, Jr.,* and *Mr. James Hensal,* for appellee.

POTTER, J. Defendant-appellee was indicted in the Court of Common Pleas of Fulton County for one count of aggravated trafficking in drugs, contrary to and in violation of R.C. 2925.03(A)(3), to wit, cultivation of marijuana. The defendant-appellee, Gary Bernath, rented and farmed land in Fulton County. On one portion of his rented farm he had a marijuana patch approximately two hundred fifty feet by eight feet, which patch was approximately three hundred feet from defendant-appellee's home. The marijuana patch was surrounded by corn on three sides and the fourth side was shielded by a wooded area. The Fulton County Sheriff's Department received a tip that the defendant-appellee was engaged in the cultivation of marijuana. Without a warrant, they entered upon appellee's farm and discovered the patch. There was a "no trespassing" sign near the private driveway leading to appellee's home; however, no fences surrounded the marijuana patch or the cornfield, there were no security devices, and there was no camouflage over the patch. Defendant-appellee filed a motion to suppress the evidence obtained from his farm, based on the decision of *Katz* v. *United States* (1967), 389 U.S. 347. The trial court determined that the case of *Hester* v. *United States* (1924), 265 U.S. 57, had been overruled *sub silentio* and the doctrine of open fields set forth in *Hester* was limited, and granted the defendant-appellee's motion to suppress. The state of Ohio has appealed and filed the following assignment of error:

"The trial court erred by sustaining defendant-appellee's motion to suppress evidence obtained from his farm."

The rule espoused by the state is set forth in 68 American Jurisprudence 2d 676, Searches and Seizures, Section 20, as follows:

"It seems clear that an open field is not an area entitled to Fourth Amendment protection, even where a civil trespass is involved, it having been said that the distinction between the search of a dwelling house and the search of open fields not within the curtilage is as old as the common law. .

"However, the word 'houses,' used in the Fourth Amendment, has been enlarged by the courts to include the curtilage, or ground and building immediately surrounding a dwelling, an area which was usually enclosed in former times; the reach or scope of this curtilage depends on the facts of any given case.

"When a substantial fence is erected to enclose the area around the dwelling and outbuildings habitually used and necessary and convenient for family purposes, such a fence ordinarily defines the curtilage, particularly in a rural area. Thus, although objects seized on the lawn or grounds around a house are ordinarily not protected by the constitutional provision against unreasonable searches and seizures, a person who surrounds his backyard with a fence, and limits entry with a gate, locked or unlocked, has shown a reasonable expectation of privacy for the area, and it is protected from unreasonable search and seizure by the Fourth Amendment.

"It has been said that the curtilage of a dwelling is a space necessary and convenient, habitually used for family purposes and for the carrying on of domestic employment; it is the yard, garden, or field which is near to and used in connection with the dwelling. Accordingly, a barn has been held to be within the curtilage of a house although it was 70 to 80 yards away and surrounded by a fence.

And a barn has been held to be within the curtilage of a dwelling house on a small farm, where there were tracks of vehicles and footprints leading both to the house and to the barn, and there was a driveway between the barn and the house." (Footnotes omitted.)

Relative to the application of the exclusionary rule in cases of misdemeanors not rising to the level of a constitutional right, cf. *Kettering* v. *Hollen* (1980), 64 Ohio St. 2d 232, 235 [18 O.O.3d 435].

In the case of *Air Pollution Variance Board of Colorado* v. *Western Alfalfa Corp.* (1974), 416 U.S. 861, rendered after the decision in *Katz,* the Supreme Court followed the *Hester* rationale and held that a test conducted by an air pollution inspector did not constitute an unreasonable search within the meaning of the Fourth Amendment, although a possible trespass occurred. *Hester, supra,* was also cited by the United States Supreme Court in *Katz, supra,* and also in the case of *Rakas* v. *Illinois* (1978), 439 U.S. 128. In *Rakas, supra,* at 144, the court in a footnote stated the following:

"On the other hand, even a property interest in premises may not be sufficient to establish a legitimate expectation of privacy with respect to particular items located on the premises or activity conducted thereon. See *Katz, supra,* at 351; *Lewis* v. *United States,* 385 U.S. 206, 210 (1966); *United States* v. *Lee,* 274 U.S. 559, 563 (1927); *Hester* v. *United States,* 265 U.S. 57, 58-59 (1924)."

Appellant, appellee and the trial court recognized that there is a conflict among several of the circuit and state courts relative to the viability of the open fields doctrine. It should be observed, however, that the United States Supreme Court has cited both *Katz, supra,* and *Hester, supra,* with approval and without noting their incompatibility. In Ohio the doctrine is mentioned in *State* v. *Borchard* (1970), 24 Ohio App. 2d 95. The applicability of *Hester, supra,* in *Borchard, supra,* is not precisely on point. This court prefers to follow

those lines of cases which hold that if an area is not within the curtilage and where there is no reasonable expectation of privacy, even if there is a trespass upon the property, Fourth Amendment protections do not apply. In the case *sub judice,* the patch was not in proximity to the dwelling nor was there any reasonable expectation of privacy. See *Casey* v. *State* (Nev. 1971), 488 P. 2d 546.[1] Appellant's assignment of error is found well taken. The judgment of the Court of Common Pleas of Fulton County sustaining the motion to suppress is reversed and vacated at appellee's costs. This cause is remanded for further proceedings according to law.

*Judgment reversed and cause remanded.*

DOUGLAS and WILEY, JJ., concur.

WILEY, J., retired, of the Sixth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Constitution.

---

[1] "*Hester* v. *United States,* 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924), decided evidence obtained through unauthorized entry upon open land is admissible. 'As to that, it is enough to say that, apart from the justification, the special protection accorded by the Fourth Amendment to the people in their "Persons, houses, papers, and effects," is not extended to the open fields. The distinction between the latter and the house is as old as the common law. 4 Bl. Comm. 223, 225, 226.' 265 U.S., at 59, 44 S. Ct., at 446. Since *Hester,* the courts have quite consistently held the Fourth Amendment's protection of privacy does not extend to open land, at least when the 'curtilage' of a home is not breached or invaded in some way. This rule has been applied even though the land was fenced, *Stark* v. *United States,* 44 F. 2d 946 (8th Cir. 1930); *Janney* v. *United States,* 206 F. 2d 601 (4th Cir. 1953); even though the land was posted with 'no trespassing' signs, *McDowell* v. *United States,* 383 F. 2d 599 (8th Cir. 1967); and even though the evidence discovered was not in plain view, *Care* v. *United States,* 231 F. 2d 22 (10th Cir. 1956). See also: *Dulek* v. *United States,* 16 F. 2d 275 (6th Cir. 1926); *Edwards* v. *United States,* 206 F. 2d 855 (10th Cir. 1953); Constitutional Law — Constitutionally Protected Areas — Search and Seizure, 18 Mercer L. Rev. 447 (1967)." (*Casey* v. *State* [Nev. 1971], 488 P. 2d at 547.)

"As appellant contends, *Katz* v. *United States,* 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967), may require us to accord some search issues different analysis than in the past; however, we find nothing in *Katz* signaling demise of the principle that an individual ordinarily has no constitutionally protected right to expect privacy in open fields." (*Casey* v. *State, supra,* at 547-548.)